UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEAN RYAN,<br><br>      Plaintiff,<br><br>     v.<br><br>KOHL'S CORPORATION and KOHL'S DEPARTMENT STORES, INC.,<br><br>      Defendants. | No. 17 CV 5854<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Jean Ryan seeks injunctive relief for violations of Title III of the Americans with Disabilities Act against a Kohl's department store at a shopping center in Brooklyn, New York. Ryan alleges that the aisles between merchandise racks at Kohl's are too narrow for her wheelchair and that widening those aisles is prescribed by Kohl's own policies and therefore, readily achievable. Ryan also asserts that although Kohl's has an ADA-compliant customer service counter, it is inaccessible because Kohl's does not staff employees there and uses it to stack merchandise, and a Kohl's employee once denied her request to use the counter. Defendants move for summary judgment on all of Ryan's claims. Ryan does not contest their motion as to Kohl's Corporation (she agrees it was not responsible for the violations), or as to her other claims not relating to the interior aisles or customer service counter. Ryan moves for summary judgment on her interior-aisle claim. For the reasons discussed below, Ryan's motion is granted, and Kohl's motion is granted in part, denied in part.

I.      **Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment: we construe all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). "Cross-motions must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute." *Bloodworth v. Vill. of Greendale*, 475 F. App'x 92, 95 (7th Cir. 2012).

II.     **Background**

Plaintiff Jean Ryan lived in Brooklyn, New York, and visited the Kohl's department store at the Ceasar Bay shopping center near her home. [63] ¶¶ 1–2.[1] She

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number. The facts are largely taken from Ryan's responses to Kohl's Local Rule 56.1 statements, [42], and Kohl's responses to Ryan's Local Rule 56.1 statements, [63], where both the asserted fact and the opposing party's response are set forth in one document. Although marked confidential for

had spinal stenosis and rheumatoid arthritis and used a motorized wheelchair to get around. *Id.* ¶ 1.[2] At her deposition, Ryan did not know the precise width of her chair but said that it was a standard width. [42] ¶ 8. In her wheelchair, Ryan was unable to access merchandise at Kohl's because the aisles between merchandise racks were too narrow and items on the floor blocked her path. [63] ¶ 35. On one visit, Ryan was unable to get close to a mirror in the bra section because of the placement of the merchandise racks. [42] ¶ 11. Kohl's responds by saying: Ryan could move unhindered along the main aisle, *see id.* ¶ 10, she never measured any of the aisles she says are too narrow, she did not attempt to proceed down the aisles, and she never asked for assistance. *See* [63] ¶ 35. None of these controvert Ryan's assertion. The width of the main aisle and that Kohl's employees would have assisted her have nothing to do with the width of the interior aisles. And Ryan could observe that an aisle was too narrow without attempting to proceed down it. That she did not attempt to proceed down every aisle makes sense given her testimony that she had gotten stuck in the past and was afraid of it happening again. *See* [43-3] at 154:7–155:23. Similarly, though Ryan did not measure the distance between the racks, she can assert, based on her personal knowledge, that there was not enough room for her to

---

purposes of discovery, Kohl's shopability and general planning guidelines are not protected from public disclosure now that they are relevant to judicial decisionmaking. *See Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002) ("In civil litigation only trade secrets, information covered by a recognized privilege, . . . and information required by statute to be maintained in confidence . . . is entitled to be kept secret on appeal."). The clerk shall unseal [40], [42], and [44].

[2] Kohl's disputes that Ryan needs a wheelchair to get around, pointing to testimony that she can stand and walk "a little bit." *See* [63] ¶ 1; [43-3] at 65:7–10. But at this stage, Kohl's does not dispute that she is disabled within the meaning of the ADA. [23] at 14, n. 1.

3

fit. *See* [63] ¶ 35; [43-3] at 157:18–25.[3] Because Kohl's has not controverted Ryan's assertion that the interior aisles were too narrow for her to access nearby merchandise, I treat it as undisputed.

All Kohl's merchandise racks were movable, though as mentioned, Ryan got stuck between merchandise racks and had trouble moving them. [42] ¶ 16; [43-3] at 154:7–155:23. There is no evidence in the record to explain how movable the racks are. The Kohl's Merchandise and Visual Presentation Department published shopability guidelines to ensure "proper spacing and placement of fixtures, allowing customers to shop easily." [42] ¶¶ 3–4; [22-1] at 62. According to the guidelines, a store should[4] maintain 30 inches between racks—measuring hanger to hanger—in the apparel, accessories, and intimates departments, as well as around beds and shoe benches. [22-1] at 62; [63] ¶ 8. A store should provide 36 inches between racks in the home, shoes, and toy departments. *Id.* The shopability standards applicable to California stores required a fixture distance of 32 inches from hanger to hanger. [63]

---

[3] After the close of fact discovery, Kohl's submitted a declaration from a store manager that refuted some of the allegations Ryan made in her complaint. *See* [22-1] at 133–34. Ryan received court permission to file an affidavit rebutting those assertions, which required her to go to the store to take measurements. In her declaration, Ryan asserts for the first time the measurements between the interior aisles. [43-4] ¶ 8. Because the store-manager declaration did not address the width of those aisles, Ryan's assertions are outside the permitted scope, and therefore untimely. I do not consider them.

[4] The guidelines instructed stores to "[a]lways maintain shopability standards. If you are unable to achieve the following objective, go to KNet . . . for more information and troubleshooting examples." [22-1] at 62. One Kohl's witness, however, referred to these standards as guidelines and clarified that not everything in the guidelines may pertain to every Kohl's store, depending on the store prototype, layout, and number of fixtures. [22-1] at 55–56. When considering Ryan's motion, I view the facts in the light most favorable to Kohl's and so consider the shopability standards to be aspirational.

¶ 23; [22-1] at 62. Though the standards did not specifically identify all departments in the store, they served as general guidelines for all departments. [63] ¶ 9.[5]

Store managers had discretion to determine the types and number of fixtures to use in their respective stores. *Id*. ¶ 19. Kohl's did not provide all store managers with formal training or instruction about the shopability standards, nor did it evaluate employee compliance with those standards (though individual store managers could monitor their own store's compliance). *Id*. ¶¶ 22, 26.[6] A Kohl's manager at a different location said that at her store, when they reset fixtures in a department every several months, they measured the spacing between fixtures. *Id*. ¶ 27. Kohl's provided each store with a tool to measure the distance between fixtures. *Id*. ¶ 13; [43-1] at 60:8–16. That store manager also said that associates visually checked the spacing between racks daily. [63] ¶ 28.

The Kohl's Store Environment and Design team created a general concept and planning document, which established fixture spacing guidelines. *Id*. ¶¶ 16–17. It was an internal document that the team used when building floor plans or designing Kohl's buildings. *Id*. at ¶ 16. This document provided: "[t]o accommodate ADA, fixtures should maintain 30-inch spacing around all apparel fixtures," and "[t]o

---

[5] Kohl's objects to some of Ryan's asserted facts about implementation of the shopability guidelines, arguing they are based on testimony from Kohl's employees at different stores. While this may undercut the weight of this evidence, the experiences at other Kohl's stores is relevant to show that other Kohl's stores adhere to the shopability guidelines, which strengthens Ryan's assertion that adherence is readily achievable.

[6] The store manager at a different location said another manager gave her verbal instructions about maintaining the shopability standards, but that it was not a formal training. [43-6] at 55:1–19.

5

accommodate ADA, fixtures should maintain 36-inch spacing around all hard line fixtures." [63] ¶ 18.[7] When asked at her deposition what relief she sought, Ryan did not identify a specific width requirement for the interior aisles, but said she wanted "enough space to be able to easily go back and forth and, you know, reach around me and touch stuff and check it out, . . . lift it off a hanger . . . or pull something off a shelf." [42] ¶ 17.

Kohl's policy provided that Kohl's associates would assist customers with disabilities with any service as needed. [42] ¶ 6. Ryan testified that on her visits to the store, there had never been an employee available to assist her at the lower portion of the customer service desk. [63] ¶ 36. While she was always able to return items, other customers had to assist her in the return process. [42] ¶ 27; [43-3] at 105:10–106:2. During one visit, she was denied assistance when she requested to use that lower counter. [63] ¶ 36.[8] Kohl's asserts that it is store policy to assist customers at the lower portion of the customer service desk upon their request. [42] ¶ 26.

### III. Analysis

The Americans with Disabilities Act provides, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of

---

[7] Kohl's argues that Ryan's assertion contains legal argument and is irrelevant and speculative. I take Ryan's assertion to be a factual one that quotes the document in the record, and I do not view it as an admission of liability.

[8] Kohl's objects saying Ryan does not recall when this visit occurred, whether she was denied assistance more than once, or any other details about the experience. This does not controvert her assertion that she requested to use the lower counter and that Kohl's refused.

6

public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). The Act defines readily achievable as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). Factors to consider include: the nature and cost of the action; the overall financial resources of the facility involved and the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; the overall financial resources of the covered entity; and the type of operation of the covered entity. *Id.*

Title III of the ADA is silent as to who bears the burden of proving that removal of an architectural barrier is or is not readily achievable. *Colo. Cross Disability Coal. v. Hermanson Family Ltd. P'ship I*, 264 F.3d 999, 1002 (10th Cir. 2001). Courts generally agree that the readily achievable standard functions as an affirmative defense, with the plaintiff bearing an initial burden of production and the defendant bearing the ultimate burden of persuasion. *See id.*; *Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 452 F.3d 1269, 1273–1274 (11th Cir. 2006); *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 373 (2d Cir. 2008); *Wright v. RL Liquor*, 887 F.3d 361, 364 (8th Cir. 2018); *Thomas v. Kohl's Corp.*, 17 C 5857, 2018 WL 704691, at *4 (N.D. Ill. Feb. 5, 2018); *but see Molski v. Foley Estates Vineyard and Winery, LLC*, 531 F.3d 1043, 1048–49 (9th Cir. 2008) (holding that the defendant bears the burden of production

7

in cases arising under 28 C.F.R. § 36.405—alterations to historic buildings).[9] This burden-shifting framework is consistent with the language of the ADA and DOJ regulations. The act recognizes that removal of some barriers will not be readily achievable and so allows using alternative methods "where an entity can demonstrate that the removal of a barrier . . . is not readily achievable." 42 U.S.C. § 12182(b)(2)(A)(v). As further evidence, applicable DOJ regulations refer to the "readily achievable defense." 28 C.F.R. 36, App. C (2011). This shows the onus is on the defendant to demonstrate that removal is not readily achievable. That said, courts have recognized the need for the plaintiff to first identify a readily achievable solution to meet her own burden of proof that the defendant is in fact violating the act. To meet this burden, a plaintiff must: (1) show that an architectural barrier exists and (2) that her proposed method of barrier removal is readily achievable. *Gathright-Dietrich*, 452 F.3d at 1273.

### A. Interior Aisles Between Movable Racks

Ryan agrees that the ADA Accessible Design Guidelines do not require Kohl's to maintain a specific aisle width between merchandise racks. *See* 28 C.F.R. 36, App. D §§ 4.1.3(12)(b), 4.3. But all public areas of Kohl's facility must comply with the general requirement to remove all architectural barriers when readily achievable. Kohl's merchandise racks are not as immovable as some architectural barriers, but

---

[9] District Courts in the Ninth Circuit have continued to apply a burden-shifting framework in cases not involving historic preservation. *See Villegas v. Beverly Corner, LLC*, No. 2:16-CV-07651-CAS(SSX), 2017 WL 3605345, at *4 (C.D. Cal. Aug. 18, 2017); *Vesecky v. Garick, Inc.*, No. 07-cv-1173-PHX, 2008 WL 4446714, at *3 (D. Ariz. Sept. 30, 2008).

they are not temporary impediments exempt from regulation. Ryan does not assert that a rolling rack of clothes blocked her access to a single area on one occasion. Instead, she alleges that the layout of racks consistently prevented her from accessing different sections of the store. She was not able to move the racks herself, and given the number aisles Ryan asserts are impassable, it would not be practical to expect her to ask an employee to move all the racks surrounding each aisle whenever she visits the store. The racks impede her shopping in the same way as a column or other built-in barrier would, and so the movable nature of the merchandise racks is not dispositive.

Ryan has established that an architectural barrier exists because Kohl's arranges its racks in a way that prevents her from accessing merchandise. She says the aisles are too narrow for her to fit through, and Kohl's does not disagree. At issue, however, is whether she has adequately proposed a readily achievable alternative. The relevant DOJ regulations list rearranging tables and display racks among the examples of things a facility can do to ensure accessibility. 28 C.F.R. § 36.304(b)(4). That said, rearranging is not always required. "The rearrangement of temporary or movable structures, such as furniture, equipment, and display racks is not readily achievable to the extent that it results in a significant loss of selling or serving space." 28 C.F.R. § 36.304(f).

To show that widening the aisles between merchandise racks is readily achievable, Ryan must articulate "a plausible proposal for barrier removal, the costs of which, facially, do not clearly exceed its benefits." *Roberts*, 542 F.3d at 373. Because

9

the defendant has unique insight into its own facility and financial resources and is therefore in a better position to evaluate feasibility, the plaintiff's proposal is not "required to be exact or detailed." *See id*. Ryan proposes that Kohl's adhere to its own shopability guidelines, which prescribe 30 inches between racks in most stores and 32 inches for stores in California (Ryan argues that if 32 inches is achievable in California, it is in New York as well).[10] Kohl's points out that these guidelines are aspirational and not tailored to the store at the Ceasar Bay shopping center. That may be true, but it would be unreasonable for Kohl's to publish aspirational guidelines for its own stores where the costs facially exceed the benefits. And if characteristics of the Ceasar Bay store make these guidelines unworkable, Kohl's had the opportunity to point them out. It presented no evidence—expert testimony or otherwise—that compliance is infeasible.[11]

I recognize that Ryan has not presented expert testimony or a detailed cost-analysis, as some courts have required. *See e.g. Gathright-Dietrich*, 452 F.3d at 1274–

---

[10] To ensure compliance with the guidelines, Ryan further proposes that Kohl's: (1) develop policies and procedures to require adoption of its California 32-inch shopability standards; (2) develop and require methods for systematically measuring aisles to maintain compliance; (3) maintain those aisle widths; (4) develop training and instruction for Kohl's employees for measuring and enforcing the standards; and (5) develop training for employees on Kohl's ADA obligations and how employees should provide assistance to customers using wheelchairs. [40] at 22.

[11] Kohl's objects that Ryan first proposed that Kohl's comply with its own shopability guidelines in her motion for summary judgment. But Ryan was entitled to conduct discovery to meet her own burden before articulating her proposed readily achievable solution. And while there may often be overlap between a plaintiff's plan and requested relief, as discussed in more detail below, the two are distinct. To the extent Ryan failed to supplement her responses about her requested relief in violation of Rule 37, any violation is harmless to Kohl's because I am not awarding injunctive relief at this time, and Kohl's will have another opportunity to address potential remedies.

75. But under the facts of this case, Ryan has met her burden. In part because she relies on Kohl's own guidelines, Kohl's had sufficient information to understand, and rebut her proposal. The guidelines provide for specific spacing between racks and contain floor plans and instructions for compliance, which was enough detail for Kohl's to assess feasibility. Also, while a plaintiff may need an expert to evaluate engineering or structural concerns when proposing a construction project, Ryan's proposal does not raise those issues. The plan is sufficiently detailed, and the costs of implementation do not facially outweigh the benefits. Ryan has met her burden, and it was up to Kohl's to prove that her plan was not readily achievable. Kohl's offers no evidence or argument about its inability to comply with its own guidelines, and so its failure to remove the barriers created by its merchandise racks is a violation of the ADA.

Kohl's also argues that it is its policy to assist customers with accessing merchandise, that Ryan never asked for help, and that she has no reason to believe that if she had her request would have been denied. But Kohl's is only permitted to use alternative methods when removing an architectural barrier is not readily achievable. 42 U.S.C. § 12182(b)(2)(A)(v). Because Kohl's has not shown that here, it cannot rely on an alternative to removal to meet its ADA obligations.

### B. Customer Service Counter and Other Violations

Genuine disputes of material fact prevent an entry of summary judgment for Kohl's as to the accessibility of its customer service counter. It is undisputed that Kohl's has an ADA-compliant counter and a written policy that employees use it upon

request. But Ryan says in practice there is never anyone staffing the counter, using it is impractical because merchandise is stacked there, and Kohl's denied her request to use it (in violation of its policy), forcing her to get help from other customers. Viewing the facts in the light most favorable to Ryan, Kohl's arguably discriminated against her by failing to provide her with equal access to its customer service counters. Ryan does not dispute that Kohl's is entitled to summary judgment on the remaining alleged violations or that Kohl's Corporation was not involved, so Kohl's motion with respect to those issues is granted.

C. **Injunctive Relief**

Although Ryan has established liability as to the internal aisles, there is not enough information in the record to craft appropriate injunctive relief. As Kohl's points out, Ryan has shifted the scope of her requested relief as the litigation has progressed, settling on the shopability guidelines only once discovery closed. Perhaps because Kohl's could no longer disclose an expert at that point, it rested its argument on Ryan's shortcomings and did not provide any evidence or argument about whether it will be able to comply with the shopability guidelines. Because Kohl's failed to meet its burden to establish its affirmative defense, this lack of evidence does not preclude a finding of liability. But it will be beneficial for both parties to gather more information before deciding the appropriate remedy.

There has been no discussion of whether Ryan's specific proposal—which requests 32-inch aisles (the guideline requirement for California stores) and training for employees—is the best way to prevent future violations. And although the burden-

12

shifting approach to liability requires that the plaintiff put forth a proposal that in some instances may form the basis of the awarded injunctive relief, the purpose of an injunction is to ensure that the defendant comes into compliance with the law, not the plaintiff's specific proposal. *See* Fed. R. Civ. P. 54(c) (Every "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."). Kohl's may be able to offer an alternative, more efficient plan for achieving compliance, and it should have the opportunity to do so.[12]

## IV. Conclusion

Ryan's motion for summary judgment, [38], is granted. Kohl's motion for summary judgment, [21], is granted in part, denied in part.

ENTER:

                                              Manish S. Shah
                                              United States District Judge

Date: September 26, 2018

---

[12] Because I am not ordering Kohl's to make any changes, I do not reach its due-process argument.

13